DEBORAH L. GRACE, APPELLANT, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, APPELLEE.
246 N. W. 2d 874

Filed November 24, 1976. No. 40575.

David J. Cullan of Cullan & Cullan, for appellant.

Joseph K. Meusey of Fraser, Stryker, Veach, Vaughn & Meusey, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

Plaintiff brought this action against the insurer under the uninsured motorist provisions of an automobile insurance policy. She seeks recovery for personal injuries sustained in a one-car accident caused by the negligence of the driver of an unidentified automobile which did not strike the car in which plaintiff was riding but left the scene of the accident. The sole issue is whether the insurance policy definition of "hit-and-run vehicle," which requires physical contact between the unidentified automobile and the automobile which the plaintiff was occupying, is in violation of statutory requirements for uninsured motorist coverage. The District Court found that the policy provisions requiring physical contact were valid and dismissed plaintiff's causes of action.

The facts were stipulated and the case was tried to the court without a jury. On April 26, 1969, plaintiff was a passenger in an automobile being driven in an easterly direction on Interstate 80 in Omaha, Nebraska. As the automobile approached the Kennedy Freeway exit, a vehicle also traveling in an easterly direction turned to the right to enter the exit to the Kennedy Freeway and then suddenly and without warning turned sharply to the left to return to the eastbound lane of travel on Interstate 80 immediately in front of the car in which plaintiff was riding. The driver of plaintiff's

car slammed on the brakes, which caused a skid, and the car then collided with a metal light pole on the side of Interstate 80 injuring the plaintiff. The other vehicle did not make physical contact with any vehicle or object but left the scene of the accident, and neither the vehicle nor the driver of the vehicle have ever been identified. Plaintiff received serious personal injuries resulting in extensive hospital confinement and disability. It is stipulated that those injuries were the direct and proximate result of the negligence of the driver of the unidentified vehicle and the resultant collision with the light pole.

Both plaintiff and the driver of the car in which she was riding had automobile insurance polices with the defendant which included uninsured motorist coverage. Plaintiff's causes of action were filed separately on each policy, but the actions were consolidated by agreement. It is stipulated that the plaintiff qualifies as an insured within the meaning of the provisions of each policy, and that plaintiff complied with all the conditions required by the policy in the definition of a hit-and-run motor vehicle except that there was no physical contact of the unidentified vehicle and the vehicle which the plaintiff occupied at the time of the accident.

The District Court specifically found that plaintiff's damages proximately resulting from the accident exceeded the sum of $20,000, and that the policy coverage of the two insurance policies could be "stacked." However, the court determined that the policy definition of a hit-and-run vehicle requiring physical contact of such vehicle with the vehicle which the insured was occupying at the time of the accident was a valid provision and was not in violation of the requirements of section 60-509.01, R. R. S. 1943. The District Court therefore dismissed plaintiff's petitions.

Section 60-509.01, R. R. S. 1943, in part provides: "No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any

person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 60-509, under provisions approved by the Director of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; Provided, * * *."

The insurance policies involved here provided that an uninsured motor vehicle includes a hit-and-run motor vehicle as defined in the policy. That definition is: "Hit-and-Run Motor Vehicle—means a land motor vehicle which causes bodily injury to an insured arising out of physical contact of such vehicle with the insured or with a vehicle which the insured is occupying at the time of the accident, * * *." The policy also requires that the identity of neither the operator or owner of the hit-and-run motor vehicle can be ascertained, in addition to other requirements which are immaterial here in view of the stipulation.

The validity of physical contact requirements in connection with uninsured motorist coverage in automobile insurance policies has been considered by many courts in many different situations. However, it is a case of first impression in this state. Uninsured motorist statutes may be roughly classified in three different categories: (1) Those which use only the term "uninsured motorist" and do not specifically mention hit-and-run vehicles or a physical contact requirement; (2) those which may or may not include the term "hit-and-run" but have a specific requirement of physical contact; and (3) those which include the term "hit-and-run," but do not have a specific physical contact requirement

in the statute. The Nebraska statute falls in the latter category. In many states uninsured motorist coverage is not compulsory. In general, Nebraska requires such coverage to be included in any motor vehicle liability insurance policy unless rejected by the insured. No matter which of the various statutory categories may be considered, courts have apparently reached opposite conclusions on the physical contact issue in every category. See Annotation, "Uninsured Motorist Endorsement: Validity and Construction of Requirement that there be 'Physical Contact' with Unidentified or Hit-And-Run Vehicle," 25 A. L. R. 3d 1299.

The judicial appraisal of the critical issue of physical contact, in essence, rests upon a determination of legislative policy and intent, particularly where uninsured motorist coverage is required by statute. Logical and persuasive reasons have been given by many courts to support the validity or invalidity of physical contact requirements. In general courts holding that the physical contact requirement is invalid have held that the requirement is contrary to public policy and legislative intent to protect persons injured on the public highways from the uninsured or hit-and-run motorist and is therefore invalid. See, for example, Hartford Acc. & Ind. Co. v. Novak, 83 Wash. 2d 576, 520 P. 2d 1368; Webb v. United Services Auto. Assn., 227 Pa. Super, 508, 323 A. 2d 737; Montoya v. Dairyland Ins. Co., 394 F. Supp. 1337 (N. M.).

In those courts which have concluded that it is reasonable to require physical contact with or by a hit-and-run vehicle under uninsured motorist provisions, the reasoning is generally based on the premise that a physical contact requirement precludes fraud upon the insurer and prevents recovery of damages in cases where the insured's injuries are only accidental or the result of his own or his driver's negligence, without the intervention of any other vehicle; but it is alleged by the insured that the accident was caused by an unidentified

vehicle which subsequently left the scene of the accident. See, Ely v. State Farm Ins. Co., 148 Ind. App. 586, 268 N. E. 2d 316; MVAIC v. Eisenberg, 18 N. Y. 2d 1, 218 N. E. 2d 524. See, also, Prosk v. Allstate Ins. Co., 82 Ill. App. 2d 457, 226 N. E. 2d 498.

In Nebraska the legislative history is not of much assistance in determining the intent of the Legislature in May of 1963, when Nebraska adopted its uninsured motorist statute. Neither can we say with any degree of assurance exactly what concept of "hit-and-run" the Legislature had in mind. The physical contact restriction was standard in most insurance policies at the time the Nebraska statute was adopted. See, Widiss, A Guide to Uninsured Motorist Coverage, § 2.2, p. 20. Comment on the floor during legislative discussion indicates that the Legislature was aware that the statute was written in the universal insurance policy language of the time. Nevertheless, there was no discussion of the issue involved here.

Courts universally agree that the prevention of fraud is a permissible and justifiable legislative purpose. Courts may disagree, however, as to which factors the Legislature considered most important in making such a policy decision. It need only be said that a requirement of physical contact attempts to prevent fraudulent claims by requiring of the claimant tangible proof of a collision with a hit-and-run vehicle. That requirement defines and limits the risk underwritten by insurers so that "fulfillment of the liberal aims of the law is not incompatible with the economic realities of insurance coverage." See Ely v. State Farm Ins. Co., *supra*. It can be, and has been, argued that the term "hit-and-run" means exactly what it says and requires physical contact. See Prosk v. Allstate Ins. Co., *supra*. It might well be said that "hit-and-run" does not translate into "cause-and-run" where statutory and contract terms are involved.

The specific policy provision here requiring physical

contact has been approved by the Nebraska Director of Insurance as required by section 60-509.01, R. R. S. 1943. While the basis for the conclusion may be ephemeral, we are convinced that the Legislature did not intend to broaden the then accepted insurance concept of a hit-and-run motor vehicle. A requirement in an automobile insurance policy that there be physical contact of a hit-and-run motor vehicle with the insured or the vehicle which the insured is occupying at the time of the accident, as a condition precedent to the assertion of a claim under the hit-and-run clause of an uninsured motorist provision, is valid and reasonable. It is not an impermissible limitation or restriction on the insurance coverage required by section 60-509.01, R. R. S. 1943, nor is it in conflict with the beneficial public policy of that statute.

The judgment of the District Court is affirmed.

AFFIRMED.

CLINTON, J., dissenting.

I respectfully dissent. The result reached in the majority opinion defeats what I believe is the underlying purpose of the uninsured motorist statute and that result is not required by either the express provisions of the statute, nor the prior opinions of this court. The reliance which the majority place upon the literal meaning of the term "hit" in the phrase "hit-and-run" is misplaced. "Hit-and-run" is a colloquialism. When viewed in the light of the evident legislative purpose, it refers not to physical contact, but rather to causation and to an operator whose identity is unknown because he fled the scene. I do not believe that anyone would suggest (irrespective of policy definitions, that the term "hit-and-run" for purposes of the statute would include a motorist who in fact is insured and who, after physical contact between vehicles, flees the scene and whose identity is unknown but is later discovered before claim is made. Yet, if we give to the phrase "hit-and-run" the literal meaning which

the majority opinion gives it, such an individual is a "hit-and-run" motorist against whom "uninsured motorist" coverage is afforded under the claimant's own policy. The language "hit-and-run" was intended to convey a concept and not necessarily to describe only physical contact between vehicles.

It is surely doubtful that the Legislature, when enacting the uninsured motorist statute, was focusing on the literal meaning of the word "hit." Rather it was concerned with affording "uninsured motorist" coverage where an unidentified motorist caused the accident and could not be found. I think that the average person who has purchased uninsured motorist coverage will be astounded to learn that he has no such coverage when he is injured after being forced from the highway by a drunken driver who is never apprehended and whose identity is never learned.

In State Farm Mut. Auto. Ins. Co. v. Selders, 187 Neb. 342, 190 N. W. 2d 789, we said, quoting from Stephens v. Allied Mut. Ins. Co., 182 Neb. 562, 156 N. W. 2d 133: " 'A provision, drawn by the insurer to comply with the statutory requirement of uninsured motorist coverage, must be construed in light of the purpose and policy of the statute. Such a provision, drawn in pursuance of a statutorily declared public policy, is enacted for the benefit of injured persons traveling on the public highways. Its purpose is to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident *caused* by an automobile covered by a standard liability policy. Such provisions are to be liberally construed to accomplish such purpose.' " (Emphasis supplied.) We went on to say: "Statutory requirements must be complied with by insurers and if the policy issued fails in this respect, the statute will be read into the policy. See Protective Fire & Cas. Co. v. Cornelius, 176 Neb. 75, 125 N. W. 2d 179."

There is ample precedent from other jurisdictions

supporting the position I would take. Hartford Acc. & Ind. Co. v. Novak, 83 Wash. 2d 576, 520 P. 2d 1368; Webb v. United Services Auto. Assn., 227 Pa. Super. 508, 323 A. 2d 737; Montoya v. Dairyland Ins. Co., 394 F. Supp. 1337.