**Raymond R. PRICE, Plaintiff,**

v.

**The CONTINENTAL INSURANCE COMPANY, Defendant.**

**C.A. No. 17219–NC.**

Court of Chancery of Delaware,
New Castle County.

Submitted: Feb. 2, 2000.
Decided: Feb. 17, 2000.

William W. Erhart, Wilmington, Delaware; for Plaintiff.

Barbara A. Freuhauf, of Cattie and Freuhauf, Wilmington, Delaware, for Defendant.

**OPINION**

LAMB, Vice Chancellor.

**I.**

This is an action to confirm an arbitration award. Because the material facts are undisputed, the parties have filed cross-motions for summary judgment presenting purely legal issues for decision. The first question posed is whether an uninsured and underinsured motorist in-

surance ("UM/UIM") policy that expressly and unambiguously excludes coverage for punitive damage awards is valid under this state's law. Previously, the Delaware Supreme Court made clear that, absent a legislative determination to the contrary, this state's public policy *does not prevent* insurers and their customers from contracting for insurance covering punitive damage awards. I hold in this case that this state's laws *do not require* that insurers provide coverage for punitive damage awards.

The second question concerns the method of calculating the payment under a UIM policy with a valid punitive damages exclusion where the record in the UIM arbitration fails to show whether the liability policy included or excluded coverage for punitive damages. Notwithstanding both the absence of this information and the award of both punitive and compensatory damages, the UIM carrier minimized the recovery under its policy by assuming that 100% of the payment by the liability carrier was attributable to compensatory damages. It then reduced the amount of compensatory damages awarded in the UIM arbitration to account for such presumed payment. The effect of this calculation is, in this case, to apply the punitive damages exclusion found in the UIM policy to both that policy and the liability policy. I conclude that this method of calculation unfairly and improperly disadvantages the injured party and violates Delaware law. Rather, where the record in the UIM arbitration fails to provide a basis on which to determine either the coverage terms of the liability policy or the character of the damages paid by the liability carrier, the UIM insurer is duty bound to maximize the amount of compensatory damages recovered under its policy by assuming that the liability carrier paid 100% of the punitive damages awarded in the UIM arbitration and only so much of

the compensatory damages as is equal to the difference between the amount of punitive damages and the liability policy limits.

## II.

A motion for summary judgment will be granted when no genuine issue as to material fact exists and the moving party is entitled to judgment as a matter of law.[1] Because the parties agree as to all pertinent facts, my application of the law will definitively resolve the matter.

### A. Express Exclusions For Payment Of Punitive Damage Awards In UM/UIM Agreements Are Enforceable

■ Plaintiff Raymond R. Price was employed by Contractual Carriers, Inc., which provided UM/UIM protection for its employees via an agreement with defendant Continental Insurance Company. Section C of the UM/UIM agreement at issue states, "This insurance does not apply to ... [p]unitive or exemplary damages." There is no dispute that this policy language clearly and unambiguously excludes coverage for punitive or exemplary damages. The question is whether such an exclusion is valid under Delaware law. I conclude that it is.

The legislative purpose underlying Delaware's UM/UIM statute, 18 *Del. C.* § 3902, is to protect "innocent persons from the negligence of unknown or impecunious tortfeasors."[2] To accomplish this purpose, § 3902(b) requires insurers to offer to all insureds the option to purchase "underinsured bodily injury motorist coverage" and provides that, if accepted, "such additional coverage shall operate to amend the policy's uninsured coverage to pay for bodily injury damage that the insured or his/her legal representative are legally entitled to recover from the driver of an underinsured motor vehicle." Relying on *Frank v. Horizon Assurance Company,*[3]

---

1. Ct. Ch. R. 56(c); *Gilbert v. El Paso Co.,* Del.Supr., 575 A.2d 1131, 1142 (1990).

2. *See generally Frank v. Horizon Assur. Co.,* Del.Supr., 553 A.2d 1199, 1201 (1989).

3. *Id.*

plaintiff contends that "except for subsection (c) dealing with multi-vehicle policies, [§ 3902(b)] does not give the right to an insurer to impose exclusions," of any sort, including, it is argued, one relating to punitive damages.

I do not read *Frank* to require a conclusion that UM/UIM coverage *must* include punitive damages. Rather, in that case, the Supreme Court invalidated an "other motor vehicle" or "OMV" restriction from the UM/UIM agreement that, were it upheld, would have prevented the injured person from recovering *any* damages for bodily injury under the policy in question.[4] The Supreme Court made clear its concern that "[o]nce [UM/UIM coverage] is purchased, the insurance consumer is entitled to secure the full extent of the benefit which the law *requires* to be offered."[5] Neither *Frank* nor any other authority holds, or even suggests, that the provisions of the UM/UIM sections of the Delaware insurance code *require* coverage for punitive damages.

I recognize that, in *Frank*, there is language to the effect that UM/UIM coverage should not be "undercut by restrictive policy provisions, unless such restrictions are specifically authorized by statute."[6] I understand this to refer to restrictive provisions designed to deprive insureds of the very coverage which is *required* to be offered to them to provide an additional source of recovery for bodily injury damage not fully compensated from the driver of an underinsured motor vehicle. Nothing in *Frank* leads me to conclude that the Supreme Court intended, by this language,

to strike down an express policy limitation on punitive damages in the UM/UIM context.

Plaintiff also relies on *Whalen v. On–Deck, Inc.*[7] and *Jones v. State Farm Mutual Auto Insurance Co.*[8] to support his contention that coverage for punitive damages may not be excluded. Neither case is helpful to him. The issue in *Whalen* was "whether the public policy of [Delaware] prevents a liability insurer from contracting to pay punitive damages assessed against its insured."[9] The Supreme Court held that insurers could lawfully contract to insure punitive damage awards and remanded the case to determine whether the contract at issue did so.[10] In *Jones,* the Supreme Court cited the rule in *Whalen* and found that no public policy existed *barring* such coverage by UM/UIM insurers.[11] Of course, neither case supports the position that such coverage is *required* or cannot be excluded.

Unsurprisingly, other decisions of our courts acknowledge that automobile insurers are not *required* to provide coverage for punitive damages. Most notably, Vice Chancellor (now Justice) Hartnett decided in *Grissom v. Nationwide Mutual Insurance Co.*[12] that no public policy exists *requiring* UM/UIM coverage for punitive damage awards. As Justice Hartnett recognized in *Grissom,* neither the punitive nor the deterrent effect of awards of exemplary damages is furthered by requiring UM/UIM providers to pay such damages to their own insured.[13] This aspect of *Grissom* remains good law, although the Supreme Court's subsequent opinion in

---

4. *See also State Farm Mut. Auto. Insur. Co. v. Washington,* Del.Supr., 641 A.2d 449 (1994) (relying upon *Frank,* and holding that a named driver exclusion violated public policy).

5. *Frank,* 553 A.2d at 1205 (emphasis added).

6. *Id.* at 1204.

7. Del.Supr., 514 A.2d 1072 (1986).

8. Del.Supr., 610 A.2d 1352 (1992).

9. 514 A.2d at 1072.

10. *Id.* at 1074. The fact that the case was remanded for interpretation of the contract refutes plaintiff's claim the *Whalen* requires such coverage.

11. 610 A.2d at 1354.

12. Del.Ch., 599 A.2d 1086 (1991).

13. *Grissom,* 599 A.2d at 1089–90.

*Jones* tacitly overruled *Grissom's* interpretation of the insurance contract at issue.[14]

## III.

The second issue arises out of Continental's application of its punitive damages exclusion in a way that minimized its liability to Price. On February 14, 1993, Price was involved in a motor vehicle accident. He and the other driver submitted that claim (for both compensatory and punitive damages) to an arbitrator, who awarded Price $188,720.[15] The other driver's liability insurer paid the $100,000 limit under its policy. Price then looked to the Continental UIM coverage to be made whole.

For reasons not entirely clear from the record, the parties submitted the UIM claim to a second arbitration, as a result of which Price was awarded compensatory damages of $150,000, and punitive damages of $35,000. Continental calculated its obligation under the UIM policy at only $50,000 by (i) excluding the $35,000 punitive damage award, and (ii) reducing the $150,000 compensatory damage award by $100,000, the entire amount received by Price from the liability carrier.

While conceding that 18 *Del. C.* § 3902(b)(3) requires a reduction in the award by the amount paid by the liability carrier, Price argues that it was wrong for Continental to apportion all of the $100,000 paid by the liability carrier to compensatory damages because this minimizes his overall recovery (and Continental's liability). Rather, he argues, Continental should

be required to treat the payment by the liability carrier in a way that maximizes the recovery to him. If so, Continental would be required to pay him $85,000, the difference between his compensatory damages ($150,000) and the amount of *those* damages presumed to have been paid by the liability carrier [$100,000 (the policy limit) minus $35,000 (the punitive damages), or $65,000.]

There is no authority dealing directly with the issue presented. However, as previously discussed, the Delaware Supreme Court has made it clear on several occasions that the public policy of this state favors providing insureds with the full extent of the UM/UIM coverage required by law.[16] In the circumstances presented on the record before me, I have no difficulty concluding that this same public policy prohibits Continental from calculating its liability to Price in a way that minimizes Price's recovery. This is because, as I said above, the record in the UIM arbitration does not disclose whether or not the other driver's liability policy excluded coverage for punitive damages and does not disclose any other information upon which Continental had a right to rely in concluding that the $100,000 payment by the other driver's liability carrier related only to compensatory damages.

I would reach a different conclusion if the record of the UIM arbitration revealed that there was a valid and enforceable exclusion for punitive damages in the liability policy. In that case, Continental would be entitled to conclude that any

**14.** The same contract language was at issue in *Grissom* and *Jones.* In *Grissom,* that language was found to exclude punitive damages. 599 A.2d at 1088. In *Jones,* the Supreme Court found the language to be ambiguous and, construing it against the insurer, held that it included such coverage. 610 A.2d at 1353–54.

**15.** The record in the UIM arbitration does not reveal the proportion of that award that related to punitive damages.

**16.** *See, e.g., Frank,* 553 A.2d 1199 (invalidating OMV provision in UM/UIM agreement);

*State Farm Mut. Ins. Co. v. Washington,* Del. Supr., 641 A.2d 449 (1994) (invalidating a named driver exclusion in UM/UIM agreement); *see also, Jones v. Horace Mann Ins. Co.,* Del.Super., 723 A.2d 390 (1998) (holding that insured persons holding several policies can maximize their coverage by choosing the policy offering the highest UIM protection, even if a policy offering lower coverage applies to the vehicle in which the insured was injured), *aff'd,* Del.Supr., No. 208, 1998, 1998 WL 764179 (Oct. 26, 1998) (ORDER).

payment made with respect to that policy was for compensatory damages and, under § 3902(b)(3), could reduce the amount of any judgment for compensatory damages against it by the full amount of the liability policy. Thus, neither insurer would bear any responsibility for payment of punitive damages.

In order to give full effect to UIM arbitration award, I will require Continental to maximize the recovery to Price by: (1) assuming that the liability insurer paid only $65,000 in compensatory damages and paid $35,000 in punitive damages and (2) requiring Continental to pay Price $85,000 for his unpaid in compensatory damages.

## IV.

In summary, UM/UIM providers and purchasers can contractually exclude coverage for punitive damage awards. This state's public policy does not render invalid a specific and unambiguous exclusion of coverage for punitive damage awards. However, even UIM providers with effective exclusions for punitive damages cannot unilaterally (and without an adequate factual basis in the record) assume that payments made by the liability insurer consist of compensatory (rather than punitive) damages so that UIM coverage is minimized.

For all of the foregoing reasons, the parties' cross-motions for summary judgment are GRANTED IN PART and DENIED IN PART. Counsel for the parties are instructed to confer and submit a final order and judgment consistent herewith within twenty (20) days from date of this Opinion.